### INTERNATIONAL GUARANTY THRIFT SYNDICATE v. ROBERTS et al.

### No. 2554.

Court of Civil Appeals of Texas. Beaumont.

June 29, 1934.

Rehearing Denied July 16, 1934.

Adams & White and Jack M. Moore, all of Beaumont, for appellant.

C. W. Wiedemann, of Beaumont, for appellees.

WALKER, Chief Justice.

On the 23d day of June, A. D. 1933, in the county court of Jefferson county at law, on trial to the court without a jury, appellees, Ruby Stripling Roberts and her husband, J. G. Roberts, recovered judgment against appellant, International Guaranty Thrift Syndicate, for $409.50, with interest at the rate of 6 per cent. per annum from November 30, 1931. The following statement is made in support of the judgment: Mrs. Roberts' maiden name was Miss Ruby Stripling. Before her marriage she had subscribed for thirty shares of building and loan stock in the Seaboard Building & Loan Association of Port Arthur, of the par value of $3,000, and by May of 1929 had paid on this stock the sum of $150.17. On that date she was induced by appellant to exchange her building and loan stock for one of its thrift bonds. In explanation of this exchange, Mrs. Roberts testified as follows:

"Q. Now look at that, Mrs. Roberts, state to the Court what that is? A. That is International Guaranty Thrift Syndicate instalment thrift bond.

"Q. Where did you get that, Mrs. Roberts? A. Where did I get it?

"Q. Yes? A. It came through the mail.

"Q. Came through the mail? A. Yes, through the mail.

"Q. Now, is that, I will ask you if that is the certificate that took the place of the Seaboard Building & Loan Association certificate? A. Yes, sir.

"Q. Now, then to whom did you make application? Tell the Court, just in your own words, how you came to make this transfer, who induced you to do it and what their names are and what they said to you? A. Well, I had the Seaboard Building & Loan stock and one afternoon after school, Mr. Glenn Haines came and told me that the Seaboard had been merged into another building and loan association so they could carry on a bigger business and they were transferring all stockholders from one company to another, just changing the name, that was the only difference and he told me if I had stock and transferred it, that was perfectly all right and if I didn't want to transfer it and wanted to withdraw my money, they would charge me a certain per cent and I would not have anything left when I got through and I had to make up my mind that afternoon and tell them yes or no.

"Q. They told you you would not have anything left when you got through if you didn't make this transfer? A. There wouldn't be much left.

"Q. They didn't tell you then that you would be paid back any money, the money you had paid to the Seaboard Building & Loan Association? A. No, I would not be paid all of it, not then, half of it.

"Q. You would not have very much left

unless you made this transfer and accepted this certificate here? A. Yes, sir.

"Q. Now, did they tell you what the nature of the business of the International Guaranty Thrift Syndicate was? A. They told me it was a building and loan association.

"Q. They told you it was a building and loan association the same as the Seaboard, did they? A. Yes, same as the Seaboard Building & Loan Association.

"Q. Did they tell you what kind of a certificate you would receive, whether it was a thrift bond or stock in their association? A. No.

"Q. They didn't tell you then they would issue you stock in their association? A. It was supposed to be stock in the association, just like the Seaboard Building & Loan.

"Q. That is what they told you? A. Yes, sir.

"Q. That they would issue you stock in the International Guaranty Thrift Syndicate, which was a building and loan association, for your stock in the Seaboard Building & Loan Association, is that correct Mrs. Roberts? A. Yes."

Her testimony on this issue was in no way controverted by appellant. Appellant appropriated the money Mrs. Roberts had paid on her building and loan stock and after the exchange collected from her the further sum of $259.33, making the aggregate sum of $409.-50. Her pleadings are rather lengthy, but sufficient to raise the issue that on the representations of appellant she believed she was exchanging her building and loan stock in the Seaboard Building & Loan Association for building and loan stock to be issued by appellant; that, instead, appellant delivered to her a thrift bond, and within a reasonable time after she discovered the deception and fraud this suit was brought to recover the money she had paid appellant and tendered back to it for cancellation its thrift bond. In support of the judgment the trial court found that all the representations made by appellant to Mrs. Roberts as an inducement for the exchange were falsely and fraudulently made; that it had not taken over the business of the Seaboard Building & Loan Association, was not doing business in Beaumont, and did not have a large sum of money to invest in homes in Jefferson county. The court further found that Mrs. Roberts "had no knowledge of corporate business practice and affairs." Her testimony was that she did not know the difference between building and loan stock and a thrift bond. The court further found

that she believed that she was to receive from appellant building and loan stock and would not have made the exchange except for its representations to that effect. On the issue of fraud we quote as follows from the court's conclusions of fact:

"The said representatives and each of them well knew that the International Guaranty Thrift Syndicate would not issue to her a certificate of stock in their syndicate and that each of them well knew that she would not be permitted to withdraw the money which she had paid into the Seaboard Building and Loan Association and to the International Guaranty Thrift Syndicate; and that the International Guaranty Thrift Syndicate would not lend her any money on her said thrift bond and that all of said representations and each of them singly and collectively were made knowingly, willfully and fraudulently for the purpose of inducing the said plaintiff to make said transfer and to induce her to continue paying the sum of $15.75 per month as dues or payments to the International Guaranty Thrift Syndicate. * * *

"That she, plaintiff, would not have transferred her stock in the Seaboard Building and Loan Association nor would she have made any payments to the International Guaranty Thrift Syndicate if she had been told the truth by the representatives of the defendant.

"8. That she signed a written and printed application for $4,500 thrift bond; that said application had printed on its back an explanation of the terms of the thrift bond; that she made several efforts to read the application which she signed but was prevented from so doing by the said Glen Haines and Mr. Childs and her attention was not called to the printed words on the back of the application and she did not know that any words or explanation of the thrift bond was so printed on the back of the application; and that she did not know the nature and terms of the application which they induced her to sign nor did they advise her what it was; that they told her it was a mere formality and amounted to nothing."

We make the following additional quotation from the testimony of Mrs. Roberts:

"A. I signed a little slip of paper.

"Q. You know what was on that slip? A. No.

"Q. Why don't you know Mrs. Roberts? A. Well, in the first place it was on a little piece of paper they handed me to sign just to know I was transferring my stock. I didn't have a chance to read it because they

talked faster than I could read, wouldn't give me a chance to read.

"Q. Did you make any effort to read it? A. Yes, I tried.

"Q. More than one time? A. Yes, two or three times, but you can't read when people are talking to you.

"Q. How did they prevent you from reading it? A. They would attract my attention to something else and say it was just a matter of form, wasn't any use reading it.

"Q. They said there wasn't any use reading it? A. None whatever, that it was just to show I transferred my stock from one company to another.

"Q. Then when you attempted to read it they would start talking to you and prevented you from reading it? A. Yes, sir.

"Q. Did they tell you there was anything on the back of that slip? A. No.

"Q. Did you know there was? A. No."

It cannot be said that appellant established against Mrs. Roberts, as a matter of law, either the issue of waiver or the issue of estoppel.

The judgment was for only the amount of money appellant had fraudulently collected from Mrs. Roberts and should, therefore, be affirmed.